United States District Court
Southern District of Texas
**ENTERED**
October 23, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEN PALLUOTTO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-00721 |
| | § | |
| NEWREZ LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before this Court is Defendant NewRez LLC's ("Defendant") Motion and Memorandum in Support of Partial Summary Judgment (Doc. No. 23), Plaintiff Ken Palluotto's ("Plaintiff") Response (Doc. No. 27), and Defendant's Reply (Doc. No. 30). Having reviewed these documents, the record, and the applicable law, the Court hereby DENIES Defendant's Motion for Partial Summary Judgment. (Doc. No. 23).

### I. BACKGROUND

This is a dispute involving the real property located at 7606 Grape St., Houston, Texas 77074, legally described as the East Forty (40) Feet of Lot Five (5), and the West Twenty-One (21) Feet of Lot Six (6), in Block Eighteen (18) of Sharpstown Subsection Three (3), a Subdivision in Harris County, Texas according to the map or plat thereof recorded in Volume 62, Page 15 of the Map Records of Harris County, Texas (the "Property"). The Property is the residence of Plaintiff and was allegedly the homestead of Plaintiff and Margaret Jankowiak ("Jankowiak").

Plaintiff and Jankowiak met and began a relationship in June 1996. By September 1996, they decided to live together and did so up until Jankowiak's death on September 14, 2016. At the time of her death, Jankowiak and Plaintiff were living on the Property.[1]

The Property was originally owned by Jankowiak's mother, Lola Jean Fry ("Fry"), who died on April 9, 2001. Upon her death, a probate proceeding was filed in a case styled *Lola Jean Fry, Deceased* under Case No. 322100 in Harris County Probate Court No. 2. Jankowiak was appointed the Independent Executor of Fry's estate. (Doc. No. 27-1 at 9). According to Fry's Will, the heirs of her Estate were her two children (one of which was Jankowiak) and two grandchildren. On July 30, 2001, Jankowiak, as the Independent Executor of the Estate, executed a Distribution Deed conveying title to the Property to Fry's four heirs in equal shares. (Doc. No. 27-2 at 2) (Harris County Clerk's File No. V223572).

On October 17, 2001, Jankowiak purchased and acquired the interests of the three other heirs of the Property via a Warranty Deed with Vendor's Lien. (Doc. No. 23-1 at 2) (Harris County Clerk's File No. V381300). To fund the purchase, Jankowiak executed a loan with Countrywide Home Loans, Inc. for $60,000, (Doc. No. 23-1 at 2–18), which was secured by a Deed of Trust granting a lien on the Property. (Doc. No. 23-1 at 7) (Harris County Clerk's File No. V381301). Neither the Warranty Deed nor the Deed of Trust was signed by Plaintiff. (Doc. No. 23-1 at 3); (Doc. No. 23-1 at 18).

---

[1] Plaintiff avers in his Affidavit, (Doc. No. 27 at 16), that he and Jankowiak decided to live together as husband and wife in September 1996. He testifies that they considered themselves to be married and claimed the Property as their homestead after Fry's death, before the execution of the liens discussed below. (Doc. No. 27 at 17). The parties, however, dispute whether Plaintiff was the common law husband of Jankowiak. For the purposes of this Order, the Court need not address this issue and will proceed on the assumption that Plaintiff was.

On February 19, 2004, Jankowiak executed a home equity loan in the amount of $24,999.90, payable to Beneficial Texas, Inc., that was also secured by a Deed of Trust granting a lien on the Property. (Doc. No. 27-5) (Harris County Clerk's File No. X422192). Again, Plaintiff did not sign the home equity loan or the Deed of Trust. On February 19, 2004, Jankowiak executed a Voluntary Designation of Homestead wherein she wrote her name as "the head of the family OR a single adult person" and wrote "N/A" next to "the spouse of the head of the family." (Doc. No. 23-1 at 35) (Harris County Clerk's File No. X422193). Plaintiff did not sign this designation either.

On October 14, 2005, Jankowiak refinanced the $60,000 and $24,999.90 loans, executing another home equity loan in the amount of $97,200 payable to Bravo Credit Corporation, secured by a Texas Home Equity Security Instrument recorded against her homestead. (Doc. No. 27-6) (Harris County Clerk's File No. Y866978). Plaintiff did not sign these documents.

On November 19, 2007, Jankowiak again refinanced the $97,200 loan, executing an additional home equity loan in the amount of $100,000 payable to ABN Amro Mortgage Group, Inc., secured by a Texas Home Equity Security Instrument. (Doc No. 27-7) (Harris County Clerk's File No. 20070700314). Plaintiff again did not sign these documents either. Through a series of assignments from 2014 to 2023, the 2007 Texas Home Equity Security Instrument was eventually assigned to NewRez LLC d/b/a Shellpoint Mortgage Servicing. (Doc. No. 23 at 9); (Doc. No. 23-1 at 106) (Harris County Clerk's File No. RP-2023-354829).

Jankowiak made all payments on the loans until her death in September 2016. After Jankowiak died, Plaintiff continued to occupy the Property and make all payments due under the 2007 Home Equity Security Instrument until May 2019.[2]

---

[2] Plaintiff swears in his Affidavit that beginning in December 2018, "problems began" regarding the 2007 Security Instrument. (Doc. No. 27 at 18). He states that "in approximately May, 2019, Loancare, without

3

Thereafter, Plaintiff filed suit against Defendant in Harris County district court requesting that the court: (1) remove the Texas Home Equity Security Instrument, and any other interest which may be claimed by Loancare, as a cloud on Plaintiff's title to the Property, (2) declare the ownership interests in the Property, (3) declare that the Texas Home Equity Security Instrument was and is void, (4) declare the amount owed, if any, to Loancare, and (5) award him his attorney's fees. (Doc. No. 1-3 at 5–7). Defendant then removed the case to this Court based on diversity jurisdiction. (Doc. No. 1).

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence

---

any notice or any stated reason, began to refuse to accept the payments." (*Id.*). Plaintiff further testifies that he contacted Loancare to find out why they had refused the payments, and they refused to talk to him. (*Id.*).

raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. ANALYSIS

Defendant moves for summary judgment on Plaintiff's claim that the 2007 Home Equity Security Instrument is invalid pursuant to Texas Constitutional requirements requiring Plaintiff's signature as Jankowiak's informal husband. Defendant argues that, even assuming arguendo Plaintiff has sufficient prove of his informal marriage to Jankowiak before November 2007, Plaintiff's own actions consented to and ratified the home equity security instrument. (Doc. No. 23 at 11–13). In response, Plaintiff argues that, under the Texas Constitution, a lien on a homestead is void unless the documents are executed by both spouses. (Doc. No. 27 at 11–12). Further, Plaintiff asserts that a non-consenting spouse's actions cannot turn a void lien into a valid one. (*Id.* at 12–13). Because Plaintiff's actions cannot create a valid lien, and estoppel and waiver do not apply, Plaintiff argues, Defendant's motion should be denied. (*Id.* at 13–14).

A. Can a Non-Consenting Spouse Subsequently Consent to a Lien?

Defendant argues that Plaintiff "subsequently consent[ed]" to its lien. (Doc. No. 23 at 12). Even if Plaintiff, as the alleged common law husband, did not sign the Security Instrument, Defendant asserts that the Texas Constitution states that a spouse may subsequently consent to a home equity security instrument. TEX. CONST. art. XVI, § 50(a)(6)(Q)(xi).[3]

---

[3] Defendant also asserts that Plaintiff ratified the 2007 Security Instrument but only cites cases concerning other types of contracts in support of this assertion. (Doc. No. 23 at 12). Defendant cites to no evidence to

5

The parties agree that the Texas Constitution requires a lien to be created "under a written agreement with the consent of each owner and each owner's spouse." TEX. CONST. art. XVI, § 50(a)(6)(A). As Defendant states, the Texas Constitution then requires that such extensions of credit are "made on the condition" that "the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit . . . if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents." *Id.* at § 50(a)(6)(Q)(xi). Thus, the Texas Constitution clearly contemplates that an owner's spouse can "subsequently consent[]" to a lien not initially created with their consent.

In response, Plaintiff argues that, as a matter of law, a non-consenting spouse's actions cannot turn a void lien into a valid lien. Plaintiff cites *Kyle v. Strasburger*, 522 S.W.3d 461 (Tex. 2017), *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783 (Tex. 1988), and *Tong v. Nationstar Mortg. LLC*, 2023 WL 2422482 (Tex. App.—Dallas Mar. 9, 2023), *review denied* (June 14, 2024) in support—all of which are either factually distinguishable or actually supportive of Defendant's argument.

First, Plaintiff cites *Kyle* for the proposition that if a lien is created without the consent of each owner's spouse, the lien is invalid. 522 S.W.3d at 465; (Doc. No. 27 at 12–13). This is certainly the general rule. *Kyle*, 522 S.W.3d at 465. The court in *Kyle*, however, goes on to state that "a home-equity loan secured by a lien that was not created with the consent of each owner and each owner's spouse . . . is [] invalid unless and until such consent is obtained." *Id.* Thus, Plaintiff's argument that a non-consenting spouse's actions cannot turn a void lien into a valid one is

---

support its argument that Plaintiff ratified the lien and the Texas Constitution is void of any provision regarding ratifying a lien on a homestead. Thus, the Court only considers Defendant's consent argument.

incorrect. *Kyle* actually supports Defendant's argument that a constitutionally noncompliant lien is void *until* cured by the non-consenting spouse's subsequent consent. *Id.*

Second, Plaintiff cites *Hruska* for the assertion that "[a] lien cannot be estopped into existence," and, therefore, Plaintiff's actions cannot transform the invalid lien into a valid lien. 747 S.W.2d at 785. *Hruska*, however, involved a lien allegedly created through oral representations. *Id.* at 784–85. On appeal, the First Court of Appeals had found that the plaintiffs' alleged oral misrepresentations "could create an equitable lien and could additionally estop the [plaintiffs] from denying the lien's validity." *Id.* at 785. The Supreme Court of Texas disagreed and found that "[a] lien on a homestead can be created only in the manner set out in the Constitution," not by mere oral representations. *Id.* at 784–85. "The fact that the [plaintiffs] may have promised to execute a lien . . . and then failed to do so, does not change the fact that no such lien was prepared." *Id.* at 784–785 (emphasis removed). *Hruska*, therefore, found that (1) a lien cannot be created by oral representations, and (2) estoppel only operates to preserve *existing* rights in a lien. *Id.*

Unlike the putative lien in *Hruska*, the asserted lien here is laid out, in writing, in the Texas Home Equity Security Instrument undisputedly signed by Jankowiak in November 2007. (Doc. No. 27-7 at 11). Defendant asserts that, even assuming Plaintiff was the common law husband of Jankowiak and, thus, the unsigned 2007 Security Instrument did not initially comply with the Texas Constitution, the Texas Constitution explicitly provides that an owner's non-consenting spouse can "subsequently consent[]" to a lien. TEX. CONST. art. XVI, § 50(a)(6)(Q)(xi). Defendant, in effect, is contending that Plaintiff's later actions evince *consent* to the lien, not that Plaintiff's actions *create* the lien. Defendant does not argue that Plaintiff's actions both created the lien and estopped Plaintiff from denying the lien's validity. Therefore, *Hruska*'s analysis of estoppel is irrelevant here. 747 S.W.2d at 783–785.

Third, Plaintiff cites to *Tong* as support for the idea that a lien cannot be estopped into existence. (Doc. No. 27 at 12–13). Indeed, *Tong* briefly reiterates *Hruska*'s holding on estoppel. 2023 WL 2422482, at *11. As stated previously, however, Defendant does not assert that Plaintiff is estopped from denying the validity of the lien. Rather, Defendant argues that Plaintiff consented to the lien after its creation and, therefore, the lien is valid. In regard to consent, the plaintiffs in *Tong* argued that the lien on their homestead was invalid because the owner's spouse did not sign the security instrument and there was no evidence of the spouse's later consent to the lien, written or otherwise. 2023 WL 2422482, at *7. In holding that the record contained legally and factually insufficient evidence to support the trial court's finding that the non-consenting spouse later consented to the lien, the court noted that the record contained evidence showing the spouse "did not sign the note, the security instrument, or any of the related loan documents." *Id.* at *10. Further, the record contained uncontroverted testimony that the owner of the homestead "never discussed the loan" with the non-consenting spouse and the non-consenting spouse "did not know about the loan" and would have objected to the loan had she known. *Id.* at *10–11.

Unlike the non-consenting spouse in *Tong*, Plaintiff testified that he knew about Jankowiak's 2007 Security Instrument. (Doc. No. 23-1 at 87–88). Not only did Plaintiff not object to the loan, but he testified that he continued to make payments on it for years after Jankowiak's death. (*Id.* at 89). Therefore, the facts in *Tong* are distinguishable from those here.

Since the Texas Constitution clearly states that a non-consenting spouse can later consent to a lien and all of Plaintiff's cases are either distinguishable or supportive of Defendant's affirmative defense, the Court finds that Plaintiff, a non-consenting spouse, can, as a matter of law, consent to the 2007 Security Instrument.

B. Did Plaintiff Consent to The 2007 Security Instrument?

As evidence of Plaintiff's consent, Defendant states that Plaintiff testified that he was aware of the original purchase money mortgage on the Property and every subsequent home equity loan executed in 2004, 2005, and 2007. (Doc. No. 23-1 at 81, 85–88). Further, after Jankowiak's death in September 2016, Plaintiff testified that he continued to make the monthly payments on the 2007 Security Instrument "as long as [Defendant] would accept" them, from "September of 2016, until May of 2019." (*Id.* at 89). In response, Plaintiff testifies in his Affidavit that he "never signed and did not consent to any of the [loans] or Deeds of Trust." (Doc. No. 27 at 17).

Under the summary judgment framework, once the movant (in this case, Defendant) carries its initial summary judgment burden of proof, the burden shifts to the non-movant (Plaintiff) to persuade the Court that the motion should not be granted by showing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 321–25; *Matsushita*, 475 U.S. at 587. Defendant has provided sufficient evidence to meet its initial summary judgment burden regarding its affirmative defense of consent. Defendant provided undisputed testimony that Plaintiff was aware of the loans at the time of their creation and made payments on the 2007 Security Instrument, despite later arguing it was void. The burden thus shifted to Plaintiff, who testified that he did not consent to the 2007 Security Instrument. Plaintiff therefore satisfied his summary judgment burden to show the existence of a genuine issue of material fact regarding Plaintiff's consent.

Accordingly, Defendant is not entitled to partial summary judgment on its affirmative defense to the effect that Plaintiff consented to the 2007 Security Instrument.

## IV. CONCLUSION

Based on the foregoing analysis, the Court **DENIES** Defendant's Motion for Partial Summary Judgment. (Doc. No. 23).

Signed on this 23'ᵈ day of October, 2025.

Andrew S. Hanen
United States District Judge